UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| PRISCILLA ROSADO-CRUZ, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) Civil Action No. 5: 21-267-DCR |
| V. | ) ) |
| LEXINGTON GOLF & TRAVEL, LLC, d/b/a PLATINUM DOLLS, et al., | ) **MEMORANDUM OPINION** ) **AND ORDER** ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the parties' joint motion for Court approval of a proposed agreement to settle the plaintiffs' claims arising under the Fair Labor Standards Act. The motion will be denied because the parties have failed to provide an explanation for the disparity between Plaintiff Alexis Murray's estimated damages and the amount she would receive under the parties' agreement. The parties' request for attorneys' fees also is deficient because they have failed to address the local market rate with respect to the proffered lodestar calculation.

**I.**

Plaintiff Priscilla Rosado-Cruz ("Rosado-Cruz") worked as an exotic dancer from December 2018 to August 2019 at Platinum Dolls, a club owned by Defendants Lexington Golf & Travel, LLC d/b/a Platinum Dolls, ACT Distributors, and GPT (DE) LLC (collectively, "the defendants"). Rosado-Cruz filed this action in October 2021, alleging that the defendants owed her monetary damages as a result of various violations of the Fair Labor Standards Act,

- 1 -

29 U.S.C. § 201, *et seq.* ("FLSA"). The parties filed a joint motion to stay the proceedings pending arbitration, and similarly-situated Plaintiffs Alexis Murray ("Murray"), Audrey Angstorm ("Angstorm"), and Katrina Gucilatar ("Gucilatar") joined the lawsuit. The parties have now filed a joint motion to lift the stay and for approval of four agreements settling the plaintiffs' claims for a net settlement amount of $37,913.70, attorneys' fees of $31,500.43, and costs of $587.00. Thus, the total amount of the settlement is $70,000.60. [Record No. 29, pp. 1, 9]

## II.

Employees are guaranteed certain rights under the FLSA, which include receiving compensation at the federally-mandated minimum wage ($7.25 per hour) plus overtime pay at a rate of one and one-half times the employee's regular rate. 29 U.S.C. §§ 206, 207. There is an exception for tipped employees, wherein employers can pay such employees less than the minimum wage if the employee's tips make up the difference between the amount the employer pays to the employee and the minimum wage. § 203(m)(2)(A)(ii). While employees may participate in a tip sharing or pooling arrangement, an employer cannot keep an employee's tips under any circumstances. § 203(m)(2)(B). Further, compensation paid to the employee is not considered "wages" if the employee must use the compensation to tip other employees or pay a fee to the employer for the ability to work. *See* 29 C.F.R. § 531.35.

The plaintiffs in the present case allege they were misclassified as independent contractors and, therefore, are owed wages due to that misclassification. With respect to tipping, the plaintiffs allege that the defendants "encouraged" them to tip DJs, managers, and security staff, which resulted in the dancers subsidizing the clubs' payment of wages to other underpaid club employees. They also allege that the defendants improperly took tips from

them by retaining private dance fees rather than paying them to the plaintiffs. Finally, the plaintiffs claim that the defendants forced them to pay "house fees" at each shift, merely for the ability to work at Platinum Dolls.

Public policy requires that employee rights under the FLSA not be compromised by settlement. *See Martin v. Indiana Michigan Power Co.*, 292 F. Supp. 2d 947 (W.D. Mich. 2002) (quoting *Roman v. Maietta Contr., Inc.*, 147 F.3d 71, 76 (1st Cir. 1998) ("[E]mployers and employees may not, in general, make agreements to pay and receive less pay than the statute provides for. Such agreements are against public policy and unenforceable.")). Although the Sixth Circuit has not definitively ruled on the issue, district courts within the Circuit have uniformly held that parties must obtain court or Department of Labor approval to settle claims arising under the FLSA. *Athan v. United States Steel Corp.*, 523 F. Supp. 3d 960, 964-65 (E.D. Mich. 2021). This requirement applies equally to FLSA settlements that involve "individual (as opposed to collective) claims." *Whitehead v. Garda CL Central, Inc.*, 2021 WL 4270121, at *1 (W.D. Ky. Sept. 20, 2021). In reviewing the parties' proposed settlement, the Court must determine whether the compromise is (1) the product of a bona fide dispute and is (2) fair and reasonable. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).

### A. A Bona Fide Dispute Exists

The parties seek to settle the plaintiffs' claims as follows:

#### 1. Rosado-Cruz

Rosado-Cruz worked at Platinum Dolls from December 2018 to August 2019, for an approximate total of 136 shifts. Although the parties do not specify the length of each shift, they report that this results in a minimum wage claim of $7,888.00. Rosado-Cruz asserts that

- 3 -

she was forced to tip-out at least $100.00 at the end of each shift, making her forced tip-out damages calculation $13,600.00. She also alleges that the defendants charged her a house fee of "at least" $20.00 at the end of each shift, resulting in approximately $2,700.00 in damages for house fees. Accordingly, Rosado-Cruz's total damages are approximately $24,208.00. Pursuant to the settlement, Rosado-Cruz would receive a net settlement amount of $24,126.64.

### 2.     Murray

Murray worked at Platinum Dolls from August 2019 to June 2022, for a total of approximately 129 shifts, resulting in a minimum wage claim of $10,703.00. Murray was forced to tip-out approximately $30.00 at the end of each shift, resulting in forced-tip out damages totaling approximately $3,750.00. She was charged a house fee of at least $30.00 at the end of each shift, which the parties have valued at a total of $3,960.00 in house fees. Accordingly, the parties estimate Murray's possible recovery at $18,413.00 for the claims alleged.

Murray would receive a net settlement amount of $10,000.00 pursuant to the parties' settlement agreement, which the parties characterize as "almost all of her projected range of damages."

### 3.     Angstorm

Angstorm worked at Platinum Dolls from September 2020 through April 2021, during which time she worked approximately seven shifts. Her minimum wage claim is approximately $488.93. The parties report that she was forced to tip-out approximately $50.00 at the end of each shift, resulting in $350.00 in tip-out damages. She was charged a house fee of at least $15.00 at the end of each shift, which the parties value at a total of $150.00 in damages for house fees. Accordingly, her estimated damages are valued at $968.93. She is

- 4 -

set to receive a net settlement amount of $2,000.00, which exceeds her projected range of damages.

### 4. Gucilatar

Gucilatar worked at Platinum Dolls from August 2021 to September 2021. During this time, she worked approximately eight shifts. The parties report that her minimum wage claim is valued at approximately $582.90. She was forced to tip-out approximately $50.00 at the end of each shift, resulting in additional damages of $400.00. Although Gucilatar alleges she was forced to pay $20.00 in house fees at the end of each shift, the parties value these damages at only $80.00, for a total estimate damages of $1,062.90. However, Gucilatar is set to receive a net settlement amount of $1,786.36, which exceeds the projected range of damages.

The parties report that each of the proposed settlement amounts is appropriate, particularly given that the plaintiffs' individual records were decidedly weaker than those retained by the defendants. While the plaintiffs did not have strong records of the dates or the number of shifts they worked, the defendants provided substantial records of the minutes the plaintiffs worked, the disbursements they made at the ends of their shifts, and their attended work periods throughout the time periods they worked at Platinum Dolls.

A bona fide dispute exists when there are "legitimate questions about the existence and extent of defendant's FLSA liability." *Estes v. Willis & Brock Foods, Inc.*, 2022 WL 697976, at *2 (E.D. Ky. Mar. 8, 2022). The primary focus of the bona-fide-dispute inquiry is to ensure that there is a genuine question about liability under the FLSA and that the employer is not simply taking advantage of an employee. *Welch v. Big Boy Rests. Int'l, LLC*, 2018 WL 4745502, at *3 (E.D. Mich. Oct. 2, 2018). The parties report that they "have strenuously different opinions about the classification of the dancers as employees or independent

contractors." [Record No. 30, p. 16] While neither party provides facts supporting its respective position regarding this issue, the parties do provide sufficient information to conclude that a bona fide dispute exists with respect to the number of hours the plaintiffs worked and the compensation they are due under the FLSA.

    **B.**    **There is Insufficient Information that the Settlement is Fair and Reasonable**

The Sixth Circuit has identified seven factors to assist courts in determining whether a settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of litigation; (3) the amount of discovery the parties have engaged in; (4) the likelihood of success on the merits; (5) the opinions of class counsel and representatives; (6) the reaction of absent class members; and (7) the public interest. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (applying factors to FLSA settlement); *Rosa v. Gulf Coast Wireless, Inc.*, 2018 WL 6326445, at *1 (E.D. La. Dec. 3, 2018) (applying factors when individual claims are resolved by the proposed settlement).

"The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Mitcham v. Intrepid U.S.A., Inc.*, 2019 WL 5496023, at *2 (W.D. Ky. May 28, 2019) (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 WL 3981461, at *11 (N.D. Ohio Aug. 22, 2008)). However, courts must scrutinize FLSA settlements for fairness and cannot simply rubber-stamp them as approved. *Murrell v. Transamerica Agency Network, Inc.*, 2021 WL 128609, at *1 (S.D. Ohio Jan 14, 2021) (citing *Snook v. Valley OB-GYN Clinic, P.C.*, 2014 WL 7369904, at *2 (E.D. Mich. Dec. 29, 2014)).

The most important of these factors is the likelihood of success on the merits, so the Court considers it first. *See Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 895 (6th Cir. 2019). "A court 'cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of relief offered in the settlement.'" *UAW*, 497 F.3d at 631. It is assumed for settlement purposes that the plaintiffs were employees as opposed to independent contractors. Otherwise, the FLSA would not apply. *See Gilbo v. Agment, LLC*, 831 F. App'x 772, 775 (6th Cir. 2020). However, the plaintiffs concede that they possess little evidence regarding the amount of time they worked and, as a result, the amount of compensation they are owed. Conversely, the defendants possess substantial records of the shifts the plaintiffs worked and the disbursements they made at the ends of their shifts. Accordingly, the plaintiffs' ability to prove these damages in arbitration or trial is questionable.

Although this factor weighs largely in favor of approval, the Court is left with weighty questions concerning the proposed settlement amount that would be awarded to Plaintiff Murray. Pursuant to the parties' proposed agreement, Rosado-Cruz would receive an amount within $100.00 of her claimed damages and both Angstorm and Gucilatar would receive amounts in excess of the damages they claim. And while the parties characterize Murray's recovery under the agreement as "almost all of her projected range of damages," it is substantially less. The parties give the same reason for compromising each plaintiff's claim—the plaintiff's poor record keeping—but do not explain why Murray is entitled to a significantly smaller proportion of her claimed damages than other plaintiffs. Without additional explanation, the Court cannot conclude that the settlements are fair and reasonable.

### III.

The parties' agreement regarding attorneys' fees compounds the uncertainty regarding the proposed settlement's fairness. While attorneys' fees are mandatory in FLSA actions, the court must determine what fee is reasonable. 29 U.S.C. § 216(b). A reasonable fee is that which is "adequately compensatory to attract competent counsel" but "avoids producing a windfall for lawyers." *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021). The starting point for determining the reasonable amount of attorneys' fees is the lodestar calculation—the product of the number of hours reasonably spent on the case by an attorney multiplied by a reasonable hourly rate. *Smith v. Service Master Corp.*, 592 F. App'x 363, 369 (6th Cir. 2014).

Apparently recognizing that the lodestar is the applicable starting point, the parties report that "[p]laintiffs' attorneys seek an amount in fees totaling less than their lodestar of $35,847.00." [Record No. 30, pp. 23. *See id.* at 18 ("Counsel is receiving far less than their lodestar.").] But the parties fail to explain how they reached this figure by discussing the number of hours billed and the applicable billing rate within this district. Plaintiffs' attorneys are located in Beverly Hills, California and bill at rates ranging from $750.00 per hour to $275.00 per hour. [*See* Record Nos. 30-1, 30-6.] While counsel provide a detailed invoice describing the billing for the work performed, they do not explain why the billing rates of attorneys located in Beverly Hills should apply in this matter.

Courts within the Sixth Circuit apply the prevailing market rate in the relevant community when calculating the reasonable hourly rate component of the lodestar determination. *Smith*, 592 F. App'x at 369. *See also Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020) (applying the "community market rule"). Exceptions to the

community market rule must be documented and explained. *See Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212, 222 (W.D. Mich. 2018) (citing *Smith*, 592 F. App'x at 369). Courts "may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate." *Id.* (quoting *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)).

Here, counsel suggests that the request for attorneys' fees in the amount of $31,500.43 should be viewed as an adjustment to the lodestar by way of a negative multiplier. [Record No. 30, p. 25] But to determine whether the fee award is reasonable, the Court must *first* determine the appropriate lodestar figure. It may then adjust that figure (upon adequate showing) to reflect case-specific considerations, particularly the degree of success obtained for the plaintiffs. *Kritcher v. Prudential Sec., Inc.*, 799 F. App'x 376, 379 (6th Cir. 2020).

The amount of attorneys' fees reflected in the parties' proposed agreement may be reasonable. But the burden is on the lawyer seeking fees to submit evidence "in addition to the attorney's own affidavits" showing that the requested rate is reasonable. *Id.* While counsel tendered several court decisions approving other settlements in which counsel participated, none of these cases were filed in the Eastern District of Kentucky or in any other district court within the Sixth Circuit. Likewise, the parties failed to identify any controlling authority approving attorney fees at a comparable rate.

It is clear based on counsel's affidavit that plaintiffs' counsel are well qualified to represent the plaintiffs in this matter. However, counsel failed to acknowledge the local prevailing market rate in determining the lodestar calculation and have not established that an exception to the rule exists.

## IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The joint motion to lift stay and for settlement approval [Record No. 30] is **GRANTED** in part and **DENIED** in part. The previously imposed stay is **LIFTED**. The motion to approve the parties' proposed settlement agreement is **DENIED**.

2. Within **14 days** the parties are directed to tender a status report or a renewed joint motion for settlement approval which is fully consistent with this Memorandum Opinion and Order.

Dated: November 22, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky