# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY – CENTRAL DIVISION

| | | |
|---|---|---|
| PRISCILLA ROSADO-CRUZ, individually and on behalf of all others similarly situated, | ) ) ) | **ELECTRONICALLY FILED** |
| Plaintiff, | ) ) | **Case No.: 5:21-cv-00267-DCR** |
| v. | ) ) ) | |
| LEXINGTON GOLF & TRAVEL, LLC dba PLATINUM DOLLS, a Kentucky Limited Liability Corporation; ACT DISTRIBUTORS LLC, a Delaware Limited Liability Corporation; GPT (DE) LLC, a Delaware Limited Liability Corporation; and DOES 1 through 10, inclusive, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFFS' NOTICE AND RENEWED UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT

**TO THIS COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on February 24, 2023, Plaintiffs Priscilla Rosado-Cruz ("Rosado-Cruz"), Katrina Gucilatar ("Gucilatar"), Audrey Angstrom ("Angstrom"), and Alexis Murray ("Murray") (collectively "Plaintiffs"), by and through undersigned counsel, hereby request the following relief: (1) approval of the settlement agreements reached between Plaintiffs and Defendants Lexington Golf & Travel, LLC dba Platinum Dolls, Act Distributors, LLC, and GPT (DE), LLC (collectively "Defendants"), particularly Ms. Murray's addendum to her original Settlement Agreement presented to this Court and her Revised Settlement Distribution, discussed in the Memorandum of Points and Authorities below, and Counsel's request for fees in her settlement agreement; and (2) in the alternative, that this Court approve the settlement agreements it deems "fair" and "reasonable" under the Fair Labor Standards Act ("FLSA"), and allow the parties to continue the litigation of the claims of those Plaintiffs that this Court finds their settlement agreements are not "fair" and "reasonable" under the FLSA.

Importantly, Plaintiffs' Renewed Unopposed Motion for Approval of FLSA Settlement ("Plaintiffs' Renewed Motion") addresses this Court's two (2) main concerns, raised its November 22, 2022 Order [Dkt. 31]: (a) the discrepancy in Ms. Murray's Damage Claim and Recovery; and (b) the prevailing local market rate in Kentucky for employment law attorneys in FLSA matters, within the first two (2) sections of this Motion. Following these sections, Plaintiffs' Renewed Motion remains virtually the same, as this Court expressed no other concerns outside of the two initially addressed in this Motion.

In addition, the Agreements, as well as Ms. Murray's Addendum to her Original Settlement Agreement, are attached as Exhibits 1-5 to the Declaration of John P. Kristensen, filed concurrently with this Motion. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶¶ 27-29, Exhibits ("Exs.") 1-5. Plaintiffs further submit to this Court that it should approve the Settlement Agreements for the reasons described in the Memorandum of Points and Authorities.

Defendants do not oppose this Motion.


Dated: March 16, 2023                    Respectfully submitted,

                                         **CARPENTER & ZUCKERMAN**


                                         */s/ John P. Kristensen*
                                         _____
                                         John P. Kristensen (*Pro Hac Vice*)
                                         California Bar No. 224132
                                         **CARPENTER & ZUCKERMAN**
                                         8827 W. Olympic Boulevard
                                         Beverly Hills, California 90211
                                         *kristensen@cz.law*

                                         Liz J. Shepherd
                                         **DOLT, THOMPSON, SHEPHERD & CONWAY, PSC**
                                         13800 Lake Point Circle
                                         Louisville, Kentucky 40223
                                         *liz@kytrial.com*


                                         ***Attorneys for Plaintiffs***

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

I.    **ADDRESSING THIS COURT'S ISSUES RAISED IN ITS NOVEMBER 22, 2022 ORDER**

### A. *Plaintiff Alexis Murray's Damage Claim and Revised Recovery*

Murray worked at Platinum Dolls from August 2019 to approximately June 2022. During this period, Murray worked approximately 129 shifts. Murray's damage claim for her minimum wage claim is approximately $10,703.00. Murray was forced to tip-out approximately $30.00 dollars at the end of each shift, totaling a forced tip-out damage calculation of approximately $3,750.00 in total at Platinum dolls. Similarly, given that Murray was charged a house fee of at least $30.00 at the end of each shift, Murray was further forced to pay approximately $3,960.00 in house fees. Thus, Murray's possible range of recovery lies at approximately $18,413.00 in total for the alleged claims against Defendants in this matter. *See* Kristensen Decl. 43.

Pursuant to her Original Agreement, Murray was set to receive a net settlement amount of $10,000.00 from Defendants. To address the concerns raised in this Court's November 22, 2022, Order [Dkt. 31], the Defendants have agreed that Murray will receive an additional net amount of $5,000.00 from Defendants, as discussed in the Addendum to Murray's Agreement. This means Murray is set to receive a net settlement amount total from Defendants of $15,000.00. *See* Kristensen Decl. ¶ 44; Ex. 3.

Furthermore, Counsels for Murray have agreed to forego $5,000.00 from their initially requested fees, and, instead, have Murray receive the $5,000.00 as a net amount of her settlement. Thus, Murray is set to receive a revised total net settlement amount of $20,000.00, which is a damage recovery that exceeds her projected range of damages. Given that Plaintiffs' individual records were decidedly weaker than those retained by Defendants, the below calculations were made and the factors therein played a role in weighing the value of each claim. *See* Kristensen Decl. ¶ 45.

The below table accurately illustrates the above-referenced numbers, which are estimated as follows:

| Minimum Wages (Liquidated): | $10,703.00 |
|---|---|
| House Fees: | $3,960.00 |
| Forced Tip-Outs: | $3,750.00 |
| **Total Loss:** | **$18,413.00** |

*See* Kristensen Decl. ¶ 46, Exs. 2.

Murray's revised total net settlement amount of $20,000.00 constitutes a reasonable compromise of her claims in this action, and one that was agreed to by Murray, Defendants, and Counsels for Plaintiffs. Murray did not have strong records of the dates or the amount of shifts she worked. On the contrary, Defendants wherein provided substantial records of the minutes Murray worked, the disbursements made by Murray at the end of her shift, and her attended work period throughout the period she worked at Platinum Dolls. *See* Kristensen Decl. ¶ 47.

### B. *Prevailing Local Market Rate in Kentucky*

It is well-settled a reasonable fee is "adequately compensatory to attract competent counsel" but "avoids producing a windfall for lawyers." *Geier*, 372 F.3d at 791. The lodestar method yields a fee that is "presumptively sufficient to achieve this objective." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). To calculate the lodestar, the court first determines counsel's reasonably hourly rate(s) and the number of hours that counsel "reasonably expended" on the case. *Rembert*, 989 F.3d at 616 (citing *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013)). While the district court has some discretion regarding the rates and hours that are reasonable, the district court may only do so when it provides a clear and concise explanation of its reasons for the fee award. *Rembert*, 989 F.3d at 616 (referencing *Gonter v. HuntValve Co.*, 510 F.3d 610, 616 (6th Cir. 2007)). Multiplying reasonable rates times reasonable hours yields the lodestar. *See Waldo*, F.3d at 821.

Of note, "to arrive at a reasonably hourly rate", courts in the Sixth Circuit "use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and

experience can reasonably expect to command within the venue of the court of record." *Geier*, 372 F.3d at 791. To determine the local market rate, courts in this Circuit rely "on a combination of its own expertise and judgment" and "proof of rates charged in the community under similar circumstances." *See Toliver v. Jbs Plainwell, Inc.,* No. 1:11-CV-302, 2015 WL 11255451, at *5 (W.D. Mich. Aug. 20, 2015), *report and recommendation adopted as modified*, No. 1:11-CV-302, 2016 WL 165031 (W.D. Mich. Jan. 14, 2016). *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, No. 6:12-CV-91-GFVT-HAI, 2016 WL 11432471, at *9 (E.D. Ky. Mar. 16, 2016), *report and recommendation adopted*, No. 12-91-GFVT, 2016 WL 3951086 (E.D. Ky. July 20, 2016).

Courts in this Circuit have recognized $485.00/hour for a Partner's time and $275.00/hour for an Associate's time throughout Kentucky. *See Clark v. West Iris Transport, Inc.*, No. 18-168-DLB-CJS, 2020 WL 2781601 at *5-*6; *see also Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-CV-703-CHB, 2019 WL 5496023, at *4 (W.D. Ky. May 28, 2019).

Counsels for Plaintiffs took this case on a contingency fee basis while facing uncertainty as to whether any recovery would be achieved at Plaintiffs' counsel's cost. Counsels for Plaintiffs spent considerable time and effort litigating these cases with the possibility of no recovery, which is oftentimes common in contingency fee cases. It is widely known that some cases yield no recovery, while others generate a substantial recovery and even a positive multiplier on their lodestar.

Here, counsels for Plaintiffs originally incurred costs in the amount of $587.00 and attorneys' fees of $35,260.00, pursuant to their court-approved rates in California. However, in revising their fees to reflect the prevailing local market rate in Kentucky, counsels for Plaintiffs incurred costs in the amount of $587.00 and attorneys' fees of $24,992.50. The fact that counsels for Plaintiffs' experience and time resulted in this extraordinary settlement emphasizes that the attorneys' fees and costs here are reasonable and appropriate. *See Crabtree v, Volkert, Inc.,* No. 11-0529-WS-B, 2013 WL 593500, at *7-8 (S.D. Ala. Feb. 14, 2013)

(approving an upward adjustment of the Plaintiff's counsel's lodestar amount given the contingency nature of the lawsuit, the merits of the case, and the settlement reached).

In this case, counsels for Plaintiffs' revised lodestar is of $25,579.50 and is the amount they request for their work performed in this matter. While the terms of the original Settlement Agreements and Ms. Murray's Addendum and Revised Settlement Distribution entitle counsels for Plaintiffs to costs in the amount of $587.00 and attorneys' fees of $26,500.43, counsels for Plaintiffs are seeking $24,992.50 in fees, which reflects the prevailing local market rate in Kentucky recognized by courts in this Circuit and is less than the 45% of the gross settlement they would be entitled to pursuant to the terms of the original Settlement Agreements and Ms. Murray's Addendum and Revised Settlement Distribution.

Further, counsels for Plaintiffs are requesting that the difference between the amount of fees they would be entitled to under the Agreements and the amount of fees they are requesting in this Renewed Motion (in the amount of $1,507.93) be distributed pro-rata between all Plaintiffs in this matter. Even with such distribution, each Plaintiff is still recovering a substantial, if not entire, part of her damaged claim. Thus, the proposed allocation of attorneys' fees does not undermine the fairness or reasonableness of the amounts received by Plaintiff for purposes of this FLSA settlement.

The fees sought in this matter are commensurate with the time and effort exerted to achieve a favorable settlement and the overall skill of Plaintiffs' attorneys. Plaintiffs' counsels are well versed in both FLSA collective actions and Rule 23 class actions and have achieved numerous successful outcomes. Furthermore, Plaintiffs' attorneys' hourly rates are reasonable and reflect the prevailing local market rate in Kentucky.

Also, while the lodestar amount is presumed to be a reasonable calculation of attorneys' fees, it is within this Court's discretion to adjust the lodestar figure. *See Gonter*, 510 F.3d at 616. Within the past two years alone, three separate judges in California have granted Plaintiffs' counsel's request to apply a negative modifier to the lodestar in order to achieve a

fee award comprising of 45% of the total FLSA settlement. *See* Kristensen Decl. at ¶¶ 59-79 Exs. 8—26. District courts in Florida and Wisconsin have followed suit and also granted Plaintiffs' counsel attorney's fees. *See* Kristensen Decl. at ¶¶ 59-79 Exs. 8—26.

Here, and as stated earlier, Plaintiffs' attorneys seek their revised lodestar amount of $25,579.50 in order to conform with this Court's November 22, 2022, Order and the laws of the Sixth Circuit, which is less than what they would be entitled under the terms of the Settlement Agreements and Ms. Murray's Addendum and Revised Distribution. Moreover, Plaintiffs' attorneys' fees and costs do not surpass the net settlements Plaintiffs will receive from Defendants.

Lastly, should the Court fail to approve any of the Settlement Agreements submitted with this Motion, Plaintiffs' attorneys request this Court approve the Settlement Agreements it finds to be fair and reasonable under the terms of the FLSA, and allow the Parties to continue the litigation of the claims.

Therefore, considering the reasonable fee request under Sixth Circuit law, Plaintiffs' counsels request this Court approve their request for attorneys' fees in these Settlement Agreements and Ms. Murray's Addendum and Revised Settlement Distribution

## II. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiffs Priscilla Rosado-Cruz ("Rosado-Cruz"), Alexis Murray ("Murray"), Audrey Angstorm ("Angstorm"), and Katrina Gucilatar ("Gucilatar"), (collectively, "Plaintiffs"), worked as exotic dancers at Defendants Lexington Golf & Travel, LLC dba Platinum Dolls, ACT Distributors, and GPT (DE) LLC (collectively "Defendants") (hereafter, collectively "the Parties") club, Platinum Dolls. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 24.

Plaintiff Rosado-Cruz filed the operative Complaint on October 20, 2021. *See* Dkt. 1. Plaintiffs Murray, Angstrom, and Gucilatar subsequently opted into this lawsuit. *See* Dkts. 10, 16, and 20 respectively. *See* Kristensen Decl. ¶ 25.

On November 21, 2021, Plaintiffs and Defendants filed a Joint Motion to Stay

Proceedings Pending Arbitration. *See* Dkt. 12. On November 24, 2021, this Court granted the Parties' Joint Motion to Stay Proceedings Pending Arbitration. *See* Dkt. 13. *See* Kristensen Decl. ¶ 26.

Before the arbitration proceedings formally began, the Parties reached the resolution as described in the Agreements. The Parties sought this Court's approval of these Agreements and, thus, on November 9, 2022, Plaintiffs filed their Notice and Unopposed Motion to Lift Stay and Approval of FLSA Settlement. *See* Dkt. 30. *See* Kristensen Decl. ¶ 27.

On November 22, 2022, this Court entered their Order whereby the previously imposed stay was lifted, but the motion to approve the parties' proposed settlement agreement was denied. *See* Dkt. 31. In their Order, the Court specified the joint motion was denied because the parties failed to provide an explanation for the disparity between Murray's estimated damages and the amount she would receive under the parties' agreement. *Id.* Further, the Court stated the parties' request for attorneys' fees was also deficient because they failed to address the local market rate with respect to the proferred lodestar calculation. *Id. See* Kristensen Decl. ¶ 28.

Following an extension of time to file a Renewed Joint Motion for Approval of FLSA Settlement, this Court ordered the Parties to meet and exchange disclosures under Fed. R. Civ. P. 26(f) and discuss the possibilities for a prompt settlement or resolution of the case, and to file a written joint report outlining the proposed discovery plan. *See* Dkt. 36. Having met pursuant to this Court's Order, the Parties now seek this Court's approval of the parties' Settlement Agreements, particularly Ms. Murray's Addendum to her Agreement and her Revised Settlement Distribution, or, in the alternative that this Court approve the settlement agreements it deems "fair" and "reasonable" under the Fair Labor Standards Act ("FLSA"), and allow the parties to continue the litigation of the claims of those Plaintiffs that this Court finds their settlement agreements are not "fair" and "reasonable" under the FLSA. *See* Kristensen Decl. ¶ 29.

## III. FACTUAL BACKGROUND

Plaintiffs were exotic dancers at Defendants club, Platinum Dolls, within the three (3)

years prior to the filing of the lawsuit, and/or within the three (3) years of the date they "opted in" as Plaintiffs. Plaintiffs alleged they were misclassified as independent contractors and were therefore owed wages due to that misclassification. *See* Kristensen Decl. ¶ 24, 30.

Defendants owned and operated the adult-oriented entertainment facility Platinum Dolls, where Plaintiffs worked, located at 1101 East New Circle Road, Lexington, KY 40505. *See Id.* *See* Kristensen Decl. ¶ 31.

## IV.   LEGAL GROUNDS FOR PLAINTIFFS' CLAIMS

Plaintiffs alleged the following causes of action: (1) Failure to Pay Minimum Wage, 29 U.S.C. § 206; (2) Illegal Kickbacks, 29 C.F.R. § 531.35; (3) Unlawful Taking of Tips, 29 U.S.C. § 203; and (4) Forced Tipping, 29 C.F.R. § 531.35. *See* Dkt. 1; *see also* Kristensen Decl. ¶ 32.

Further, Plaintiffs categorized their damage claims into three (3) distinct categories. The first type of damage claims related to Defendants' failure to pay minimum wages pursuant to the FLSA 29 U.S.C. § 206. The other damage claim under these legal grounds, related to Plaintiffs' contentions that Defendants required them to "tip-out" unlawfully and at Plaintiffs' own expense. Plaintiffs' claims addressed two (2) types of tipping violations. Plaintiffs alleged that the dancers were "encouraged" to tip DJs, managers, and security. Plaintiffs argued that this constituted a forced subsidization of Defendants' club, which represented unlawful "kickbacks" in violation of 29 U.S.C. § 203. Plaintiffs further contended that this forced tipping was a violation of 29 C.F.R. § 531.35, which resulted in the dancers subsidizing the clubs' payment of wages to other underpaid club employees. *See* Kristensen Decl. ¶ 33.

The second form of tipping violations, for which Plaintiffs claimed damages, was that Defendants retained private dance fees, rather than paying them out to Plaintiffs. Defendants maintained that these charged fees belonged to them. Plaintiffs, however, allege that these tips were improperly taken from them. *See* Kristensen Decl. ¶ 34.

Lastly, Plaintiffs claimed that Defendants forced them to pay "house fees" merely for the ability to work at Platinum Dolls. Plaintiffs maintain that they were required to pay these fees to

Defendants at each shift, in violation of 29 C.F.R. § 531.35. *See* Kristensen Decl. ¶ 35.

Thus, when Plaintiffs ultimately resolved this matter, there were four separate claims, maintained by each dancer, the damage calculation of which went into the valuation of their respective claims. Furthermore, there was substantial debate between the Parties regarding the number of shifts and dates each dancer worked. Defendants disagreed with Plaintiff's factual assertions. *See* Kristensen Decl. ¶ 36.

## V.   THE SETTLEMENT AGREEMENTS AND MS. MURRAY'S ADDENDUM AND REVISED SETTLEMENT DISTRIBUTION

Under the Agreements, Defendants have agreed to pay Plaintiffs settlements which range from approximately $3,514.75, for the smallest of the damage claims, to approximately $44,133.36 for the largest of the damage claims. Importantly, in light of Ms. Murray's Addendum and Revised Settlement Distribution, each respective settlement is well within the ranges for approval, despite the range between them. These ranges are equitable based on the size of each Plaintiffs' individual claims. Pursuant to the Agreements, Defendants have agreed to pay Plaintiffs gross settlements of which attorneys' fees and costs, when properly allocated, will allow Plaintiffs to receive a net recovery within the range of their respective damages. *See* Kristensen Decl. ¶ 37.

As reflected below, Plaintiffs' allocations are entirely in line with their estimated damages. Their recovery, therefore, constitutes a full satisfaction of their claims. As more thoroughly detailed in their respective settlement agreements and Ms. Murray's Addendum, Plaintiffs' settlements are as follows:

| PLAINTIFF | GROSS SETTLEMENT AMOUNT | NUMBER OF TOTAL HOURS WORKED |
|---|---|---|
| Angstrom | $3,903.18 | 34hrs |
| Gucilatar | $3,514.75 | 40hrs |
| Murray | $23,449.31 | 738hrs |

| | | |
|---|---|---|
| Rosado-Cruz | $44,133.89 | 544hrs |
| **TOTAL** | **$75,001.13** | **1356hrs** |

*See* Kristensen Decl. ¶ 38, Exs. 1-5.

### A.  *Plaintiff Rosado-Cruz's Damage Claim and Recovery*

Rosado-Cruz worked at Platinum Dolls from December 2018 to approximately August 2019. Rosado-Cruz paid the highest amount of tip-outs amongst Plaintiffs, making her damage claim the largest. Rosado-Cruz worked approximately a total of 136 total shifts. Rosado-Cruz's damage claim for her minimum wage claims is approximately $7,888.00. Further, Rosado-Cruz asserts that she was forced to tip-out at least $100.00 dollars at the end of each shift, totaling a forced tip-out damage calculation of approximately $13,600.00 in total during her time at Platinum Dolls. Similarly, given that Rosado-Cruz was charged a house fee of at least $20.00 at the end of each shift, Rosado-Cruz was further forced to pay approximately $2,700.00 in house fees. Thus, Rosado-Cruz's possible range of recovery lies at approximately $24,208.00 in total for the alleged claims against Defendants in this matter. *See* Kristensen Decl. ¶ 39.

Pursuant to her settlement agreement, Rosado-Cruz is set to receive a net settlement amount of $24,126.64, a recovery which encompasses almost all her projected range of damages. Given that Plaintiffs' individuals records were decidedly weaker than those retained by Defendants, the below calculations were made and the factors therein played a role in weighing the value of each claim. *See* Kristensen Decl. ¶ 40.

The below table accurately illustrates the above-referenced numbers, which are estimated as follows:

| | |
|---|---|
| Minimum Wages (Liquidated): | $7,888.00 |
| House Fees: | $2,700.00 |
| Forced Tip-Outs: | $13,600.00 |
| **Total Loss:** | **$24,208.00** |

*See* Kristensen Decl. ¶ 41, Exs. 1.

Rosado-Cruz's net settlement amount of $24,126.64 is within her reasonable range of approval under the claims for this action, and one that was agreed to by Rosado-Cruz and Defendants. Plaintiff did not have strong records of the dates or the amount of shifts she worked. On the contrary, Defendants wherein provided substantial records of the minutes Rosado-Cruz worked, the disbursements made by Rosado-Cruz at the end of her shifts, and her attended work period throughout the period she worked at Platinum Dolls. *See* Kristensen Decl. ¶ 42.

### B. *Plaintiff Alexis Murray's Damage Claim and Revised Recovery*

See Section I-A.

### C. *Plaintiff Audrey Angstrom's Damage Claim and Recovery*

Angstrom worked at Platinum Dolls from September 2020 to approximately April 2021. During this period, Angstrom worked approximately seven (7) shifts. Angstrom's damage claim for her minimum wage claim is approximately $488.93. Angstrom was forced to tip-out approximately $50.00 dollars at the end of each shift, totaling a forced tip out damage calculation of approximately $350.00 in total. Similarly, given that Angstrom was charged a house fee of at least $15.00 at the end of each shift, Angstrom was further forced to pay approximately $150.00 in house fees. Thus, Angstrom's possible range of recovery lies at approximately $968.93 in total for the alleged claims against the Defendants in this matter. *See* Kristensen Decl. ¶ 48.

Pursuant to her agreement, Angstrom is set to receive a net settlement amount of $2,000.00, which is a damage recovery constituting more than her projected range of damages. Given Plaintiffs' individuals records were decidedly weaker than those retained by Defendants, the below calculations were made and the factors therein played a role in weighing the value of each claim. *See* Kristensen Decl. ¶ 49.

Below is a table that illustrates the above-referenced numbers and estimates as follows:

///

///

///

| Minimum Wages (Liquidated): | $488.93 |
|---|---|
| House Fees: | $150.00 |
| Forced Tip-Outs: | $350.00 |
| **Total Loss:** | **$968.93** |

*See* Kristensen Decl. ¶ 50, Ex. 4.

Angstrom's net settlement amount of $2,000.00 constitutes a reasonable compromise of her claims in this action, and one that was agreed to by Angstrom and Defendants. Plaintiff did not have strong records of the dates or the amount of shifts she worked. On the contrary, Defendants wherein provided substantial records of the minutes Angstrom worked, the disbursements made by Angstrom at the end of her shifts, and her attended work period throughout the period she worked at Platinum Dolls. *See* Kristensen Decl. ¶ 51.

### D. Plaintiff Katrina Gucilatar's Damage Claim and Recovery

Gucilatar worked at Platinum Dolls from August 2021 to September 2021. During this period, Gucilatar worked a roughly eight (8) shifts. Gucilatar's damage claim for her minimum claim is approximately $582.90. Gucilatar was forced to tip-out approximately $50.00 dollars at the end of each shift, totaling a forced tip-out calculation of approximately $400.00 in total. Similarly, given Gucilatar was charged a house fee of $20.00 at the end of each shift, Gucilatar was further forced to pay approximately $80.00 in house. Thus, Gucilatar's possible range of recovery lies at approximately $1,062.90, in total, for the alleged claims against Defendants in this matter. *See* Kristensen Decl. ¶ 52.

Pursuant to the agreement, Gucilatar is set to receive a net amount of $1,786.36, which exceeds her projected range of damages. Given that Plaintiffs' individual records were decidedly weaker than those retained by Defendants, the below calculations were made and the factors therein played a role in weighing the value of each claim. *See* Kristensen Decl. ¶ 53.

Below is a table that illustrates the above-referenced numbers and estimates as follows:

| Minimum Wages (Liquidated): | $582.90 |
| House Fees: | $80.00 |
| Forced Tip-Outs: | $400.00 |
| **Total Loss:** | **$1,062.90** |

*See* Kristensen Decl. ¶ 54, Ex. 5.

Gucilatar's net settlement amount of $1,786.36 constitutes a reasonable compromise of her claims in this action, and one that was agreed to by Gucilatar and Defendants. *See* Kristensen Decl. ¶ 47. Plaintiff did not have strong records of the dates or the amount of shifts she worked. On the contrary, Defendants wherein provided substantial records of the minutes Gucilatar worked, the disbursements made by Gucilatar at the end of her shifts, and her attended work period throughout the period she worked at Platinum Dolls. Given Gucilatar's records are decidedly weaker than Defendants, the below calculations were made, and the factors therein played a role in weighing the value of each claim. *See* Kristensen Decl. ¶ 55.

Plaintiffs' counsel litigated this case extensively in Court and in arbitration. The above settlement amounts are significant in that they consider the amount of time litigated, the ability to reach a resolution, and further, the ability to collect. These factors are decidedly relevant in the settlement negotiations and ultimate resolutions, particularly considering the currently unknown economic environment. *See* Kristensen Decl. ¶ 56.

### E. *Consideration in Exchange for Settlement*

In exchange for the consideration above, Plaintiffs have agreed to dismiss their claims related to any alleged violations of the FLSA, and any state wage and hour claims stemming from Plaintiffs' employment with the Defendants. *See* Kristensen Decl. ¶ 57.

Furthermore, Counsels for Plaintiffs initially incurred $35,260.00 in fees and were recovering $587.00 in costs. As such, Counsels for Plaintiffs initially possessed a lodestar of $35,847.00 and requested $31,500.00 in fees. However, considering this Court's November 22, 2022, Order and in applying the prevailing local market in Kentucky for counsels in this field,

Counsels for Plaintiffs now incurred fees in the amount of $24,992.50 and costs of $587.00 and possess a lodestar of $25,579.50. Counsels for Plaintiff now request their proffered lodestar of $25,579.50 for their work in reaching the resolution of this case for Plaintiffs. *See* Kristensen Decl. ¶ 58.

## VI.    STANDARD FOR APPROVAL OF FLSA SETTLEMENT

The Sixth Circuit has not established a firm criterion on the factors considered in determining whether an FLSA settlement warrants approval; however, District Courts in this Circuit have routinely followed the Eleventh Circuit's *Lynn's Food Stores* standard. *See Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-CV-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008) (citations omitted); *see also Does 1-2 v. Déjà Vu Servs. Inc.*, 925 F.3d 886 (6th Cir. 2019), *aff'g* 2017 WL 2629101, at *8 Mich. Jun. 19, 2017 (affirming the approval of a settlement involving, *inter alia,* FLSA claims where the district court applied the *Lynn's Food* standard).

Under *Lynn's Food*, a District Court may approve an FLSA settlement only if it reflects "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Crawford*, 2008 WL 4724499, at *2 (quoting *Lynn's Food Stores*, 679 F.2d at 1355). "If a settlement in an employee FLSA suit does not reflect reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Accordingly, FLSA settlements require the supervision of the Secretary of Labor or the district court. *See Lynn's Food Stores*, 679 F.2d at 1352-53. The FLSA also requires that a settlement agreement include an award of reasonable fees. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action").

Further, "when employees bring a private action for back wages under the [FLSA], and

present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Thus, under the *Lynn's Food Stores* standard, consistently used and implemented in this Circuit, District Courts must consider the following factors when deciding whether settlements warrant approval: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expenses, and likely duration of the litigation; (3) the stage of the proceedings; and the amount of discovery completed; (4) the strength of Plaintiffs' case and the probability of Plaintiffs' success on the merits; (5) the range of possible recovery; (6) the opinions of the counsel; and (7) the public interest. *Ware v. CKF Enterprises, Inc.*, No. 5:19-CV-183-DCR, 2020 WL 2441415, at *10 (E.D. Ky. May 12, 2020) (quoting *Déjà Vu Servs.*, 925 F.3d at 894-95) (internal citations omitted). Of those factors, likelihood of success is the most important and "warrants discussion before the others." *Id.*

When considering these factors, the Court should keep in mind the "strong presumption in favor of finding a settlement fair." *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Moreover, "a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) (other internal citations omitted). As discussed below, those factors strongly favor approval of these settlements. Each factor is discussed individually for this Courts consideration in deciding for approval of the above-described settlements.

## VII.   APPROVAL OF FLSA SETTLEMENTS

### A.  *Bona Fide Dispute*

A *bona fide* dispute exists when there are "legitimate questions about 'the existence and extend of defendant's FLSA liability." *Estes v. Willis & Brock Foods, Inc.*, No. 6:18-CV-00197-GFVT, 2022 WL 697976, at *2 (E.D. Ky. Mar. 8, 2022). Thus, some doubt must exist that Plaintiffs would succeed on the merits through litigation of their claims. *Ross v. Jack Rabbit*

*Servs., LLC*, No.3:14-CV-44-DJH, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 717 (E.D. La. 2008).

The Court should approve the Agreements because they reflect a reasonable compromise of *bona fide* disputes regarding both Defendants' alleged FLSA liability, and Plaintiffs damage claims. There was no collusion in reaching the Agreements. The Parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the Agreements reached were the result of good-faith, arms' length negotiation between the Parties. Counsel for Plaintiffs, Mr. Kristensen has tried multiple employment cases, particularly dealing with the FLSA, and obtained substantial settlements against employers, including against another exotic dance club in excess of a million dollars. Mr. Kristensen has also settled more than fifty individual FLSA claims against strip clubs in the past two years, including during the COVID-19 pandemic. *See* Kristensen Decl. ¶¶ 2-22, 59-79 Exs. 8—26.

Further, the Parties have strenuously different opinions about the classification of the dancers as employees or independent contractors. They maintain that disagreement as to whether the "dance fees" charged by and collected by the Defendants belonged to them or whether they were tips belonging to Plaintiffs. The Parties' counsel were cognizant the other's arguments and positions as they pertained to employee classifications. Furthermore, the Parties participated in settlement negotiations in good-faith. The Parties defended their positions about the disputed aspects of the case and ultimately, an amicable resolution was reached.

Because the Parties disputed foundational aspects of the case, the purpose of the bona fide dispute requirement, used by Courts in this Circuit, has clearly been satisfied here. *See Walker v. Ryan Transportation, Inc.*, No. 20-CV-11688, 2021 WL 2786547, at *1 (E.D. Mich. June 15, 2021) (quoting *Lynn's Food Stores*, 679 F.2d at 1353) ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime, compensation, or liquidated damages when no actual dispute exists between the parties.")

///

### B. Fair and Reasonable Resolution

The Sixth Circuit has previously indicated in *Déjà Vu Servs.*, 925 F.3d at 894-99, that courts should use the same standard to assess the fairness, reasonableness, and adequacy of a settlement under the FLSA in actions, whether they be classified as a collective or class action. In such cases, courts evaluate settlements using the "*UAW* fairness factors": (1) the risk of fraud or collusion; (2) the "complexity, expense and likely duration of the litigation;" (3) the "amount of discovery engaged in by the parties;" (4) the "likelihood of success on the merits;" (5) the opinions of counsel; (6) the reactions of "absent class members;" and (7) the "public interest." *See Déjà Vu Servs.*, 925 F.3d at 894-95 (citing *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)) (referred to as "*UAW*"). Plaintiffs will address each of these factors accordingly.

### 1. The Risk of Fraud or Collusion

When considering this factor, Courts look for indications that the plaintiffs' counsel "allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation" or for "evidence of more 'subtle signs' of collusion, such as 'when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution, but class counsel are amply rewarded." *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Importantly, "courts in this Circuit respect the integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence of the contrary is offered." *Midland Funding, LLC v. Brent*, No. 3:08-CV-1434, 2011 WL 3557020, at *15 (N.D. Ohio Aug. 12, 2011); *see Brent v. Midland Funding, LLC*, No. 3:11-CV-1332, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011); *see also* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §§ 11.51 (4th ed. 2002).

The Agreements, each and every one of them, came about as the result of extensive pre-suit investigation, review of formal and informal discovery, zealous advocacy on both sides, and substantial arm's-length negotiations between counsels. While Counsels for Plaintiffs are

receiving payment of reimbursable costs and attorneys' fees from the settlements, there is nothing out of the ordinary in this arrangement. Counsels are not receiving a disproportionate distribution of the settlement, nor are Counsels being amply rewarded while Plaintiffs forgo distribution. On the contrary, each settlement amounts to almost the entire damage claim calculation of each and every Plaintiff, if not in excess of their calculation, and Counsel is requesting to receive their lodestar. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The Parties' settlement is not a "clear sailing" arrangement and Counsels for Plaintiffs does not seek a separate payment for their fees apart from those delineated, and further approved by this Court, as a part of the gross settlement amount.

This factor, therefore, weighs in favor of approval.

## 2. The Complexity, Expenses, and Likely Duration of Litigation

Courts will approve an FLSA settlement wherein there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all. *See Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); 4 A Conte & H. Newberg, *Newberg on Class Actions*, §11:50 at 155 (4th ed. 2002). Several facts in this case potentially jeopardize Plaintiffs' recovery should their claims proceed in arbitration, including Defendants' written employment policies and testimony from supervisors contradicting Plaintiffs' claims, and Plaintiffs' potential inability to prove Defendants' alleged violations were willful or their ability to corroborate the number of hours and shifts worked. Accordingly, further litigation might result in Plaintiffs recovering less than the settlement, or perhaps nothing at all.

This factor, therefore, weighs in favor of approval.

## 3. Amount of Discovery Engaged by the Parties

Courts have held "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement. *See*

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982).

The settlement is the result of extensive pre-suit investigation, review of formal and informal discovery, and substantial arm's-length negotiation between counsels. The Parties had a good understanding of the merits of their positions by the time Counsels for The Parties began settlement negotiations. Ultimately, these negotiations lead to the settlement of the claims of this case.

This factor, therefore, weighs in favor of approval.

### 4. Likelihood of Plaintiffs' Success on the Merits/Possible Range of Recovery

Regarding Plaintiffs' range of possible recovery, courts in the Sixth Circuit have upheld substantial awards of attorney's fees even though a plaintiff recovery is less than the attorney's fees. *See Fegley*, 19 F.3d at 1135 (upholding $40,000 in fees for $7,680 in recovery); *Posner v. The Showroom, Inc.*, 762 F.2d 1010, 1985 WL 13108 at *2 (6th Cir. 1985) (upholding an award of $1,955 in fees, even though the underlying judgment for plaintiffs was $393.20); *Mackin v. Delta Metals Co., Inc.*, No.2:08-CV-2667, 2011 WL 13070420 (W.D. Tenn. July 6, 2011) (approving fee award of $48,802.02, even though plaintiff's recovery was only $300.15); *Abdelkhalew v. Precision Door of Akron*, No.5:07-CV-3585, 2010 WL 395236 (N.D. Ohio Jan. 25, 2010) (approving $30,470.10 in attorney's fees even though plaintiff was awarded only $3,948.96 in damages); *Brantingham v. Emergency Servs., Inc.*, No. 2:16-CV-1169,, 2017 WL 5175866, at *1 (S.D.Ohio Nov. 8, 2017) (approving $35,112.50 in fees even though client was awarded only $13,168.63 in damages); *Funk v. Airstream, Inc.*, No.3:17-CV-260, 2019 WL 4599816, at *7 (S.D. Ohio Sept. 23, 2019) (upholding a fee award of $164,927.50, even though class was awarded $21,338.00).

The FLSA structure was intentionally designed by Congress as a remedial measure to incentivize and encourage private attorneys to pursue lower damage wage and hour claims with

clear liability. "[T]he FLSA is a uniquely protective statute," *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016), and its purposes "require that it be applied even to those who would decline its protections," *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). By awarding reasonable fees and costs to prevailing FLSA litigants, "Congress intended to encourage private citizen enforcement of the [FLSA]." *Soler v. G & U, Inc.*, 658 F.Supp. 1093, 1097 (S.D.N.Y. 1987). Indeed, "Plaintiffs' counsel's role as private attorneys general is key to the effective enforcement of these statutes." *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-6094 (PAE), 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014).

Counsels for Plaintiffs anticipated that Plaintiffs' damages, had the case proceeded to arbitration, to be in the upwards $45,000.00 range, gross for all Plaintiffs. Here, Plaintiffs obtained an adequate compromise in recovery of that amount. Plaintiffs did not have strong records of the dates or the amount of shifts they worked, nor of the amounts they were forced to tip-out after each shift or charged as house fees by Defendants at the end of each shift. On the contrary, Defendants herein provided substantial records of the minutes Plaintiffs worked, the disbursements made by Plaintiffs at the end of their shifts, and their attended work shifts throughout the period Plaintiffs worked at Platinum Dolls. Therefore, the above calculations were made considering all factors therein, which played a role in weighing the value of each claim.

Furthermore, this settlement is undoubtedly favorable for each Plaintiff, in light of the work performed in the lawsuit and the juncture of the litigation at the time the settlement was reached, making the settlement amounts entirely reasonable. Counsel spent considerable time pursuing negotiations and preparing a settlement of the matter which is evidenced in their revised lodestar amount of $25,579.50. Despite Counsel for Plaintiffs' skill, tenacity, and the potential of a large attorneys' fees award contributed to the overall settlement, Counsel for Plaintiffs are only asking for compensation in the amount of their lodestar. As such, these settlements are

unequivocally favorable to Plaintiffs and considering the work performed in the lawsuit and the juncture of the settlement in this litigation, the settlement amount is reasonable. *See* Kristensen Decl. *See* KristensenDecl. ¶ 23-58.

This factor, therefore, weighs in favor of approval.

### 5. Opinions and Experience of Counsel

In determining whether a settlement is fair and reasonable, courts in this Circuit evaluate the opinions of counsel, including their "familiarity with th[e] litigation and previous experiences with similar cases. *See Déjà Vu Servs.*, 925 F.3d at 894-95 (citing *UAW*, 497 F.3d at 631).

Counsels for Plaintiffs and Defendants' have substantial experience litigating wage and hour cases and handling complex and class actions. Counsels for the Parties knew the strengths and weaknesses of the opposing side's case, as can be evidenced by the fully briefed motions before the Court. Counsels for Plaintiffs have substantial experience and judgment gave way to this Settlement. Additionally, Plaintiffs have been made aware of the terms of the settlement and have signed the Agreements. In particular, Ms. Murray was aware of the terms of the Addendum to her Agreement and signed therein.

This factor, therefore, weighs in favor of approval.

### 6. Reactions of Absent Class Members.

Given the present matter is not a class action, nor a certified collective action, each respective Plaintiffs pursued their claims individually against Defendants. As such, there are no absent class or collective members whose reactions require consideration by this Court in evaluating the merits of this Motion.

This factor, therefore, weighs in favor of approval.

### 7. The Public Interest

Courts in this Circuit recognize "settlement is the preferred means of resolving litigation." *Davis*, 2021 1214501, at *10-11; *Ware*, 2020 WL 2441415, at *14 (quoting *Crawford*, 2008 WL 4724499, at *9). The choice before courts in this Circuit is whether to

approve a hard-won agreement between the Parties that would resolve the claims and provide compensation to Plaintiffs, or, to deny the proposed agreement and send the Parties back to pre-agreement status quo and continue collective litigation that is often "notoriously difficult and unpredictable[.]"*Davis*, 2021 1214501, at *11; *see Déjà Vu Servs.*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Public interest also calls for the approval of settlement agreements. *Davis*, 2021 1214501, at *11 (quoting *Ware*, 2020 WL 2441415, at *14)

These settlement Agreements do not possess any factors that would call for its rejection by this Court. There is no evidence of improper conflicts of interests, fraud or collusion, or anything that would suggest there was a violation of state and/or federal law in the settlement negotiation process. All the parties see the proposed settlement Agreement as a rational improvement of the *status quo* and, most importantly, an adequate manner by which to resolve the claims of this lawsuit.

This factor, therefore, weighs in favor of approval.

## VIII. THE REQUEST FOR ATTORNEYS' FEES AND COSTS IS REASONABLE

### A. FLSA Collective Action Settlements Allow for a Greater Recovery for Plaintiffs than Rule 23 Class Action Settlements

Counsels for Plaintiffs are seeking less than their incurred fees under their California rate, but rather, consistent with Sixth Circuit law, the prevailing market rate in Kentucky. Taking this into consideration, Counsels for Plaintiffs request their lodestar amount of $25,579.50. This is a modest amount compared to many FLSA settlements and is consistent with Congress's intent to incentivize counsels to take in minimum wage cases were it would be otherwise uneconomical.

Plaintiffs' requests for attorneys' fees are reasonable and in line with many other district court orders granting similar fees in FLSA settlements. FLSA settlements are distinct from Rule 23 class action settlements and, as such, allow for a greater recovery of settlement awards for the plaintiffs involved. Several district judges around the country have granted similar requests for

attorneys' fees for Plaintiffs' counsel within the last three years. *See* Kristensen Decl. ¶¶ 59-79
Exs. 8—26.

In Rule 23 class actions, attorneys often seek fees more than their lodestar by requesting
that the court apply a positive modifier. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp.
2d 249, 271 (D.N.H. 2007) (approving Rule 23 class action settlement with lodestar multiplied of
2.697); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305-06 (3d Cir. 2005), *as amended* (Feb.
25, 2005) (approving a lodestar cross-check multiplier of 4.07); *See also Vizcaino v. Microsoft
Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002). By contrast, here, Plaintiffs' counsels are merely
revising their request from their original Motion and are now seeking their lodestar amount, not
an increase to it. ¶¶ 59-79 Exs. 8—26.

FLSA settlements are subject to a different standard and allow for a greater recovery of
attorneys' fees than Rule 23 class action settlements in order to encourage attorneys to take on
these sorts of wage-and-hour cases. Importantly, "neither the text, nor the purpose of the FLSA,
supports a proportionality limit on recoverable attorneys' fees." *Rembert*, 986 F.3d at 617
(citing *Fisher v. SD Protection Inc.*, 948 F.3d 593, 603 (2d Cir. 2020)). If courts in FLSA cases
capped the awardable fees at some percentage of that monetary value, many workers with valid
FLSA claims "would be unable to 'attract competent counsel' to represent them." *Rembert*, 986
F.3d at 617 (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)).

Indeed, public policy encouraging attorneys to take on FLSA cases often results in
situations where the attorney's fees surpass the Plaintiffs' award. *See Fegley v. Higgins*, 19
F.3d 1126, 1134 (6th Cir. 1994) (affirming attorney fees of $40,000 on a judgment of $7,680
for overtime compensation); *Posner*, 1985 WL 13108 at *2 (6th Cir. 1985) (upholding
substantial awards of attorney's fees even though a plaintiff recovered only nominal damages);
"In determining fee awards, courts should not 'become green-eyeshade accountants[,] but
instead must content themselves with 'rough justice[.]' *See Carter v. Hickory Healthcare, Inc.*,
905 F.3d 963, 970 (6th Cir. 2018) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

### 1. Plaintiffs' Counsels Seek Their Lodestar Amount

Plaintiffs' attorneys seek an amount totaling their lodestar amount of $25,579.50. *See* Kristensen Decl. ¶ 58; Exs. 6-7. Moreover, Plaintiffs' attorneys' fees and costs do not surpass the net settlement Plaintiffs will receive from Defendants. Given all Plaintiffs are set to recover close to, if not in excess of, their estimated damage calculations, Plaintiffs' counsel experience as a litigator in FLSA actions continuous yielded positive fruits to Plaintiffs, that they otherwise would not have had they not pursuit this matter with Plaintiffs' counsel. This is also a modest amount compared to many FLSA settlements and consistent with Congress's intent to incentivize counsels to take minimum wage cases were it would be otherwise uneconomical.

### B. *Plaintiffs' Attorneys' Fees Represent the Prevailing Local Market Rate in Lexington, Kentucky, and Would Therefore be a Reasonable Award*

See Section I-B.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Renewed Motion in its entirety.


Respectfully Submitted,


Dated: March 16, 2023                    */s/ John P. Kristensen*

                                                 Liz J. Shepherd
Kentucky Bar No. 84033
**DOLT, THOMPSON, SHEPHERD & CONWAY, PSC**
13800 Lake Point Circle
Louisville, Kentucky 40223
Telephone: (502) 242-8872
*liz@kytrial.com*

John P. Kristensen (*Pro Hac Vice*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, California 90211
*kristensen@cz.law*

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Thursday, March 16, 2023, a true and correct copy of the attached **PLAINTIFFS' NOTICE AND RENEWED UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT** was served via CM/ECF upon the following parties pursuant to Rule 5 of the Federal Rules of Civil Procedure:

John Kevin West, Esq.
STEPTOE **&** JOHNSON PLLC
41 South High Street, Ste 2200
Email: *kevin.west@steptoe-johnson.com*

*Counsel for Defendants*

Liz J. Shepherd
**DOLT, THOMPSON, SHEPHERD & CONWAY, PSC**
13800 Lake Point Circle
Louisville, KY 40223
*lshepherd@kytrial.com*

*Counsel for Plaintiffs*

*/s/ John P. Kristensen*
John P. Kristensen